J-S04008-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISAIAH BROOKS | : | |
| | : | |
| Appellant | : | No. 897 EDA 2020 |

Appeal from the Judgment of Sentence Entered February 24, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000979-2019

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED FEBRUARY 2, 2022**

Appellant, Isaiah Brooks, appeals from the judgment of sentence of an aggregate term of two to four years' incarceration, imposed after he was convicted, following a non-jury trial, of possession of a firearm by a person prohibited,[1] possession of a firearm without a license,[2] and carrying a firearm in public in Philadelphia.[3]  On appeal, Appellant challenges the sufficiency of the evidence to support his convictions, arguing that the Commonwealth failed to prove that he possessed a firearm.  After careful review, we affirm.

The trial court summarized the facts of this case, as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1).

[2] 18 Pa.C.S. § 6106(a)(1).

[3] 18 Pa.C.S. § 6108.

At Appellant's trial, Sergeant Joseph Rauch testified on behalf of the Commonwealth. The sergeant testified that, on January 22, 2019, at approximately 11:00 p.m., he was on duty as a Philadelphia [p]olice officer. []Notes of Testimony ("N.T."), 12/20/19, at 8[]. On that date and time, he and Officer Nicoletti, Sergeant Rauch's partner, stopped a black Nissan in the 300 block of Sedgley Avenue because the vehicle was traveling westbound on Sedgley without headlights. *Id.* at 9-10.

Sergeant Rauch observed Appellant, who was in the Nissan's back seat, reach "behind the passenger['s] seat." *Id.* at 10. Appellant "[q]uickly started bouncing ... from the middle of the back seat to behind the driver's seat." *Id.* As he was doing this, Appellant looked back at the sergeant and his partner[] "four or five times." *Id.*

The sergeant then approached the Nissan's passenger side and saw three people in the automobile—a driver, a front-seat passenger, and Appellant in the back seat. *Id.* at 10-11. While Sergeant Rauch spoke with the individual in the front passenger's seat, the sergeant shined his flashlight into the Nissan and observed "a ton of trash on the floor." *Id.* at 11, 24. Amongst the trash on the floor in the vehicle's back seat area, Sergeant Rauch saw the handle of a black handgun. *Id.* The gun was located behind the passenger's seat, *i.e.*, where the sergeant [had] observed Appellant reaching. *Id.* Sergeant Rauch notified his partner of the gun, and Officer Nicoletti removed Appellant from the vehicle. *Id.* Then, the sergeant recovered the weapon and went to his police vehicle. *Id.* at 12.

When he was back at his police vehicle, Sergeant Rauch noticed that Appellant "broke free from [Officer Nicoletti] and started fleeing westbound on Sedgley Avenue." *Id.* at 12-13. Thus, the sergeant drove to the intersection of Lawrence and Venango Streets, where Officer Nicoletti caught Appellant. *Id.* at 13. Appellant was subsequently handcuffed and arrested. *Id.* at 14. When Sergeant Rauch returned to the 300 block of Sedgley Avenue, he discovered that the black Nissan was gone. *Id.*

On the night of the incident, Sergeant Rauch and Officer Nicoletti were wearing body cameras. *Id.* at 14-15. The Commonwealth played the body camera video footage, which was entered into evidence as C1 and C2, respectively. *Id.* at 14-16. The video [footage] corroborated Sergeant Rauch's testimony.

At the conclusion of the testimony, the parties stipulated that: … Appellant was prohibited from possessing a firearm, *[i]d.* at 29; … Appellant did not have a license to carry a firearm. *[i]d.*; … [and that] the Philadelphia Police Department's Firearms Operation Unit tested the firearm, which Sergeant Rauch recovered, and determined it was operable. *Id.* at 30.

Trial Court Opinion (TCO), 10/26/20, at 1-3.

Based on this evidence, the court convicted Appellant of the above-stated crimes. On February 24, 2020, the court sentenced him to the aggregate term stated *supra*. Appellant filed a timely notice of appeal, and he also complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on October 26, 2020. Herein, Appellant states the following issue for our review: "Was the evidence insufficient to prove [Appellant] guilty of … [the f]irearm … charges[,] as the Commonwealth failed to prove that he possessed a firearm?" Appellant's Brief at 4.

Initially, we note that,

[w]e review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Melvin*, 103 A.3d 1, 39 (Pa. Super. 2014) (citation and quotation omitted). Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Id.* at 40 (citation and quotation omitted). "Because evidentiary sufficiency is a matter of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Brooker*, 103 A.3d 325, 330 (Pa. Super. 2014).

*Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018).

- 3 -

In the instant case, Appellant challenges each of his firearm convictions on the ground that the Commonwealth failed to prove that he possessed the firearm recovered from the vehicle in which he was riding.

This Court has held that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Heidler*, 741 A.2d 213, 215 (Pa. Super. 1999). Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (conviction under 18 Pa.C.S. § 6106(a) supported by a finding of constructive possession). *See also Commonwealth v. Parker*, 847 A.2d 745 (Pa. Super. 2004) (same). "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." *Hopkins*, *supra* at 820 (citation and quotation omitted). "We have defined constructive possession as conscious dominion," meaning that the defendant has "the power to control the contraband and the intent to exercise that control." *Id.* (citation and quotation omitted). "To aid application, we have held that constructive possession may be established by the totality of the circumstances." *Id.* (citation and quotation omitted).

It is well established that, "[a]s with any other element of a crime, constructive possession may be proven by circumstantial evidence." *Commonwealth v. Haskins*, … 677 A.2d 328, 330 ([Pa. Super.] 1996) (citation omitted). In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue. *See, e.g.*, *Commonwealth v. Davis*, 743 A.2d 946, 953–54 (Pa. Super. 1999) (holding that evidence was sufficient to prove constructive possession over drugs found in common areas of an apartment where the defendant entered the apartment using his own key, and possessed $800 in cash on his person, and police recovered defendant's identification badge, size-appropriate clothing, and firearms from a bedroom).

Significant to the instant appeal, a defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control

- 4 -

over those items. ***Commonwealth v. Valette***, … 613 A.2d 548, 551 ([Pa.] 1992). Thus, the location and proximity of an actor to the contraband alone is not conclusive of guilt. ***Commonwealth v. Juliano***, … 490 A.2d 891, 893 ([Pa. Super.] 1985). Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession. ***Id.*** [(]*citing* ***Commonwealth v. Thompson***, … 428 A.2d 223, 224 ([Pa. Super.] 1981)[)].

If the only inference that the fact finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession. ***Valette***, ***supra*** at 551. "It is well settled that facts giving rise to mere 'association,' 'suspicion' or 'conjecture,' will not make out a case of constructive possession." ***Id.***

***Parrish***, 191 A.3d at 36-37.

Here, the trial court concluded that, "[u]nder the totality of circumstances, the evidence presented by the Commonwealth proved beyond a reasonable doubt that Appellant constructively possessed the firearm recovered on the floor of the vehicle where Appellant was seated." TCO at 5-6. The court explained:

Sergeant Rauch's testimony, much of which was corroborated by body cam video, was credible. The sergeant offered specific testimony about Appellant's movements prior to the sergeant's discovery of the firearm.

Sergeant Rauch testified that he observed Appellant reach down to his right while sitting in the middle of the Nissan's back seat. Appellant repeatedly turned and looked back at the policemen. Then, when Sergeant Rauch looked into the Nissan, he saw the handle of a firearm, protruding from trash and debris on the floor behind the passenger's seat. The gun was located in the same place where the sergeant saw Appellant reaching.

This evidence, which included the sergeant's description of the firearm's location and position[,] as well as Appellant's suspicious movements prior to discovery of the gun, demonstrated Appellant's "knowledge of the existence of the firearm[,]" as well

as his intent and power to control it. ***Parrish***, 191 A.3d at 37; ***see Commonwealth v. Cruz Ortega***, 539 A.2d 849, 851 (Pa. Super. [] 1988) (holding [that the] appellant had constructive possession of cocaine recovered from vehicle of which [the] appellant was a passenger; officer saw [the] appellant lean over seat before stop and cocaine was found under [the] appellant's seat).

The [c]ourt also duly considered the fact that Appellant fled from the police after Sergeant Rauch discovered the firearm. As the Pennsylvania Supreme Court has explained, "When a person commits a crime, knows that he is wanted therefore, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis [of a conviction] in connection with other proof from which guilt may be inferred." ***Commonwealth v. Clark***, 961 A.2d 80, 92 [(Pa. 2008)] (quoting ***Commonwealth v. Rios,*** 684 A.2d 1025, 1035 (Pa. 1996)) (alteration in original).

In summary, based on the location of the firearm, Appellant's proximity to the gun, and Appellant's flight, the evidence proved that Appellant constructively possessed the firearm, which Sergeant Rauch recovered. Accordingly, Appellant's claim that the Commonwealth failed to present sufficient evidence to support his convictions lacks merit.

***Id.*** at 6-7 (citations to the record omitted).

We discern no error in the court's decision, and we are unconvinced by Appellant's arguments on appeal. For instance, Appellant challenges the court's reliance on his flight from police as indicating his guilty conscious. He stresses that the other two occupants of the vehicle also fled, thus indicating that they were guilty, too. However, the trial court did not rely on Appellant's flight alone. Rather, it cited other factors, *in addition to his flight*, that established his constructive possession of the gun — namely, his close proximity to the weapon, his movements toward the location at which the gun

was recovered, and his repeatedly looking at the officers as they approached the vehicle.

Moreover, we reject Appellant's argument that this case mirrors *Commonwealth v. Boatwright*, 453 A.2d 1058 (Pa. Super. 1982). There,

> [t]he Commonwealth's evidence disclosed that, shortly after 10:00 p.m. on April 10, 1979, Officers Charles Roller and Annette Roebuck responded to a radio call concerning three "suspicious" men in an automobile parked in front of a residence in the Hazelwood section of Pittsburgh. Upon arriving at the location, Officer Roller observed [Boatwright], who was seated in the front passenger seat of the vehicle, "moving towards his left rear." The officer could not see [Boatwright's] hand or arm, only a movement of his body. Officer Roller then opened the door of the automobile and asked [Boatwright] to get out. He shined a light onto the left rear floor of the vehicle and saw a gun. In addition to [Boatwright], the car was occupied by the driver and another passenger who was seated in the left rear seat. The car was registered to the driver's girlfriend and the gun to one Darlene Simpson.

*Id.* at 1058-59 (citations to the record omitted). In deeming this evidence insufficient to prove that Boatwright had constructively possessed the gun, we stressed that "[t]he only evidence other than mere presence was Officer Roller's testimony that [Boatwright] made a movement toward the left rear of the vehicle. This evidence cannot provide proof beyond a reasonable doubt that [Boatwright] possessed the firearm in question. Therefore, the conviction cannot be sustained." *Id.* at 1059 (citation omitted).

Appellant contends that, as in *Boatwright*, the other occupants of the vehicle in this case also had access to the firearm. He further insists that, under our reasoning in *Boatwright*, his "reaching towards the area where the

gun was recovered" was insufficient proof that he constructively possessed the gun, where Sergeant Rauch "did not see his hands and never saw him touching the firearm." Appellant's Brief at 10.

Appellant's argument is meritless. As the Commonwealth stresses, Boatwright was sitting in the front passenger seat and was reaching toward the left rear seat, *where another passenger was sitting*. **See** Commonwealth's Brief at 11. To the contrary, here, Appellant

> was the *sole* occupant of the back seat where the gun was located. Sergeant Rauch[] saw [Appellant's] shoulder movement and the direction [Appellant's] shoulders were pointing, which were toward the area where the gun lay. Furthermore, [Appellant] reached toward the firearm and subsequently switched seats to move away from the firearm, looking back as he did so at the officers approaching. The firearm was in plain view, only partially obscured by trash – which, of course, a reasonable fact[-]finder could conclude had been placed over the gun by [Appellant] in an attempt to hide it when the officers saw him moving and reaching toward that area. [Appellant] also fled the scene after he was removed from the car, supporting a finding that he knew about and controlled the illegal weapon. Therefore, **Boatwright** is not analogous to this case.

**Id.** (citations to the record omitted; emphasis in original). We agree with the Commonwealth.

Accordingly, Appellant has failed to demonstrate that the evidence was insufficient to prove that he constructively possessed the firearm. Rather, the circumstantial evidence of his close proximity to the firearm, his furtive movements while glancing at the approaching officers, the fact he was the only individual in the backseat where the gun was found, and his flight from

police after the weapon was discovered, was sufficient to prove that he constructively possessed the gun.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/02/2022